## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JAGIR BHULLER, et. al.,**

               Plaintiffs,

    vs.

**GUIDANT CORPORATION and
GUIDANT SALES CORPORATION,**

             Defendants.

CASE NUMBER  1:06CV00487

JUDGE: Gladys Kessler

DECK TYPE: General Civil

DATE STAMP: 03/15/2006

### NOTICE OF REMOVAL BY DEFENDANTS

Defendants Guidant Corporation and Guidant Sales Corporation ("Defendants"),[1] pursuant to the provisions of 28 U.S.C. § 1441(a) and (b) and 28 U.S.C. § 1446, file this Notice of Removal of this cause from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia.  In support of this Notice of Removal, Defendants state as follows:

1.      On February 17, 2006, Plaintiffs filed this action against Defendants.  A copy of Plaintiffs' Complaint filed in Superior Court is attached as "Exhibit A."  The action is styled as *Jagir S. Bhuller and Roger-Guy Folly and Jaycee Gardner and Connie Jackson and Ramsaran Sahu, Plaintiffs v. Guidant Corporation and Guidant Sales Corporation, Defendants,* in the Superior Court for the District of Columbia.

---

[1]    Cardiac Pacemakers, Inc. ("CPI"), a wholly-owned subsidiary of Guidant Corporation, designed and manufactured the medical device at issue in this case.  Because Guidant Corporation played no part in the design, manufacture or distribution of these devices, it is an improper party to this suit and should be dismissed.

2.      On February 23, 2006, the first Defendant was served with Plaintiffs' Complaint. The Complaint was the first pleading received by Defendants setting forth the claims for relief on which this action is based. Defendants file this Notice of Removal within 30 days of receipt of the initial pleadings and within one year of the commencement of this action as required by 28 U.S.C. § 1446(b). Accordingly, removal of this action is timely. No previous application for removal has been made.

3.      This suit is an action of which this Court has original jurisdiction under the provisions of Title 28, United States Code, Section 1332, and is one that may be removed to this Court under the provisions of Title 28, United States Code, Section 1441. Removal under Section 1441 is appropriate in that there exists complete diversity of citizenship between Plaintiffs and Defendants in the underlying cause, and the amount in controversy exceeds $75,000. This action is being removed to the District Court for the district where the action is pending.

4.      Plaintiff Jagir S. Bhuller is a citizen of Virginia. *See* Complaint caption.

5.      Plaintiff Roger-Guy Folly is a citizen of the District of Columbia. *See* Complaint caption.

6.      Plaintiffs Jaycee Gardner, Connie Jackson and Ramsaran Sahu are citizens of Maryland. *See* Complaint caption.

7.      Guidant Corporation is a foreign corporation. Guidant Corporation is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Thus, pursuant to 28 U.S.C. § 1332(c)(1), Guidant Corporation is a citizen of Indiana.

8.    Guidant Sales Corporation is a foreign corporation.   Guidant Sales Corporation is an Indiana corporation with its principal place of business in Indianapolis, Indiana.   Thus, pursuant to 28 U.S.C. § 1332(c)(1), Guidant Sales Corporation is a citizen of Indiana.

9.    Pursuant to 28 U.S.C. § 1332, complete diversity of citizenship exists between Plaintiffs and Defendants.

10.    Based on Plaintiffs' allegations and the damages sought, the amount in controversy exceeds $75,000, exclusive of interest and costs.   Plaintiffs have sued Defendants for negligence, strict liability, breach of warranty, misrepresentation, and punitive damages arising from Plaintiffs' use of defibrillators that were allegedly designed, manufactured and distributed by Defendants.   Each Plaintiff seeks Two Million Dollars ($2,000,000.00). *See* Complaint at p. 20.

11.    As demonstrated above, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000 and is between citizens of different states.

12.    A copy of this Notice of Removal is being served on Plaintiffs and filed with the Superior Court for the District of Columbia.

WHEREFORE, Defendants give notice that the matter styled as *Jagir S. Bhuller and Roger-Guy Folly and Jaycee Gardner and Connie Jackson and Ramsaran Sahu, Plaintiffs v. Guidant Corporation and Guidant Sales Corporation, Defendants,* in the Superior Court for the

District of Columbia is removed to the United States District Court for the District of Columbia,

and request that this Court retain jurisdiction for all further proceedings.

Respectfully submitted,

Carlos E. Provencio, Bar No. 461227
SHOOK, HARDY & BACON L.L.P.
600 14th Street, N.W., Suite 800
Washington, D.C. 20005-2004
Telephone: (202) 783-8400
Facsimile: (202) 783-4211

OF COUNSEL:

Timothy A. Pratt
Deborah A. Moeller
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone:    (816) 474-6550
Telefax:        (816) 421-5547

ATTORNEYS FOR DEFENDANTS
GUIDANT CORPORATION AND
GUIDANT SALES CORPORATION

# EXHIBIT A

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

JAGIR S. BHULLER
5207 11th Street North
Arlington, VA 22205

and

ROGER-GUY FOLLY
4870 Blagden Avenue, N.W.
Washington, D.C. 20011-3716

and

JAYCEE GARDNER
6803 Eastridge Road
Baltimore, MD 21207

and

CONNIE JACKSON
123 Cree Drive
Oxon Hill, MD 20745

and

RAMSARAN SAHU
13102 Nordic Hill Road
Silver Spring, MD 20906

      Plaintiffs,

      v.

GUIDANT CORPORATION
111 Monument Circle, 29th Floor
Indianapolis, IN 46204
w/s/o CT CORPORATION SYSTEM
1015 15th Street, NW, #1000
Washington, DC 20005

GUIDANT SALES CORPORATION
111 Monument Circle, 29th Floor
Indianapolis, IN 46204
w/s/o CT CORPORATION SYSTEM
1015 15th Street, NW, #1000
Washington, DC 20005

      Defendants.

] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ] ]

Civil Action No.

06-0001221

RECEIVED
Civil Clerk's Office

FEB 17 2006

Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT
### (ICD Litigation – Products Liability, Punitive Damages)

1.      Jurisdiction is founded upon 11 D.C. Code §921 (1981 ed.).

2.      At all relevant times, Defendants are engaged, or have been engaged, in the testing, manufacturing, licensing, marketing, selling, promoting, and distributing, either directly or indirectly through third parties, of implantable cardioverter defibrillators ("ICDs") and/or pacemakers throughout the United States, and are doing business in the District of Columbia.

## COUNT I
### (Negligence – Jagir Bhuller v. Guidant Corp., et al.)

3.      On or about July 26, 2004, Plaintiff Bhuller was implanted with a Guidant Vitality A-155 dual chamber defibrillator for ventricular tachycardia. The device was implanted at Virginia Hospital Center in Arlington, Virginia.

4.      On or about June 17, 2005, Guidant issued a recall of certain of its ICDs, including the Vitality A-155, due to defects in the devices.

5.      As a result of the Defendants' defective ICD, Mr. Bhuller required surgery to replace said defective device on or about August 25, 2005, at the Inova Alexandria Hospital in Alexandria, Virginia.

6.      As a result of the Defendants' defective ICD, Mr. Bhuller suffered injuries, including, but not limited to, ICD replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

7.      Said injuries were the result of the negligence of the Defendants, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs, negligent design, and failure to heed and report adverse reports regarding the safety of ICDs.

## COUNT II
### (Strict Liability – Jagir Bhuller v. Guidant Corp., et al.)

8.    All of the allegations contained in Count I are realleged and incorporated herein by reference.

9.    Defendants were at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs, which they sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Bhuller.

10.    While Defendants were engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs, Defendants sold the ICDs to other healthcare providers for use by and resale to patients, including Plaintiff Bhuller.

11.    The subject ICD implanted in Mr. Bhuller was in the same form and condition in which it existed when Defendants' sold and/or provided and delivered the ICD for distribution to various healthcare providers.

12.    Defendants expected the ICD to reach consumers, including Mr. Bhuller, in the condition in which they sold them.

13.    Said product was defective when placed on the market by Defendants. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

14.    Said product was defective and unreasonably dangerous when put to its intended use.

15.    As a result of Defendants' marketing and promotion of said defective and unreasonably dangerous product, Mr. Bhuller was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

3

16.    By reason of having marketed and promoted ICDs in their defective and unreasonably dangerous condition, Defendants are strictly liable to Plaintiff Bhuller for his ICD-related injuries, losses, and damages.

## COUNT III
### (Breach of Warranty – Jagir Bhuller v. Guidant Corp., et al.)

17.    All of the allegations contained in Counts I and II are realleged and incorporated herein by reference.

18.    At all times relevant to this action, Defendants marketed and promoted ICDs accompanied by implied and express warranties and representations to physicians and their patients that the device was efficacious to treat ventricular tachycardia as directed for such purposes.

19.    Defendants knew, or should have known, that patients, including Plaintiff Bhuller and his attending physicians, were relying on Defendants' skills and judgments, and the implied and express warranties and representations.

20.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

21.    As a direct result of the breach of warranties by the Defendants, Plaintiff Bhuller has been injured as aforesaid.

## COUNT IV
### (Misrepresentation – Jagir Bhuller v. Guidant Corp., et al.)

22.    All of the allegations contained in Counts I, II, and III are realleged and incorporated herein by reference.

23.    Defendants represented to patients, including Plaintiff Bhuller and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD

4

was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

24.    Plaintiff Bhuller and his attending physicians did, in fact, rely on Defendants' representations in their advice about purchase, use, and implantation of the subject ICD.

25.    At all times relevant to this action, these representations were known to Defendants to be false or they were made by Defendants in conscious, reckless and/or unreasonable disregard of facts available to Defendants, indicating a lack of efficacy and a danger to patients.

26.    As a direct result of said false representations by Defendants, Plaintiff Bhuller was injured as aforesaid.

## COUNT V
### (Punitive Damages – Jagir Bhuller v. Guidant Corp., et al.)

27.    The acts of the Defendants were gross, wanton and intentional in that Defendants, at the time of Plaintiff Bhuller's implant, had actual and constructive notice that the subject ICD was defective.  Additionally, the Defendants knew or should have known that the subject ICD was ineffective, of no use and provided no benefit to the patient. Nonetheless, the Defendants knowingly and intentionally promoted the subject ICD as safe and effective to treat ventricular tachycardia disregarding the adverse reports that demonstrated the defective nature of the subject ICD.  Additionally, the Defendants fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Bhuller by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD.

## COUNT VI
### (Negligence – Roger-Guy Folly v. Guidant Corp., et al.)

28.    All of the foregoing allegations are realleged and incorporated herein by reference.

29.     On or about January 7, 2005, Plaintiff Folly was implanted with a Guidant Contak Renewal 3 H170 biventricular ICD. The device was implanted at Washington Hospital Center in Washington, D.C.

30.     On or about June 17, 2005, Guidant issued a recall of certain of its ICDs, including the Contak Renewal H170, due to defects in the devices.

31.     As a result of the Defendants' defective ICD, Mr. Folly requires ongoing medical monitoring and may require surgery to replace said defective device.

32.     As a result of the Defendants' defective ICD, Mr. Folly suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD, incurred medical expenses for care and treatment, and suffered physical and mental pain.

33.     Said injuries were the result of the negligence of the Defendants, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs, negligent design, and failure to heed and report adverse reports regarding the safety of ICDs.

## COUNT VII
### (Strict Liability – Roger-Guy Folly v. Guidant Corp., et al.)

34.     All of the allegations contained in Count VI are realleged and incorporated herein by reference.

35.     Defendants were at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs, which they sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Folly.

36.     .While Defendants were engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs, Defendants sold the ICDs to other healthcare providers for use by and resale to patients, including Plaintiff Folly.

6

37.    The subject ICD implanted in Mr. Folly was in the same form and condition in which it existed when Defendants' sold and/or provided and delivered the ICD for distribution to various healthcare providers.

38.    Defendants expected the ICD to reach consumers, including Mr. Folly, in the condition in which they sold them.

39.    Said product was defective when placed on the market by Defendants. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

40.    Said product was defective and unreasonably dangerous when put to its intended use.

41.    As a result of Defendants' marketing and promotion of said defective and unreasonably dangerous product, Mr. Folly was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

42.    By reason of having marketed and promoted ICDs in their defective and unreasonably dangerous condition, Defendants are strictly liable to Plaintiff Folly for his ICD-related injuries, losses, and damages.

## COUNT VIII
### (Breach of Warranty – Roger-Guy Folly v. Guidant Corp., et al.)

43.    All of the allegations contained in Counts VI and VII are realleged and incorporated herein by reference.

44.    At all times relevant to this action, Defendants marketed and promoted ICDs accompanied by implied and express warranties and representations to physicians and their patients that the device was efficacious to treat ventricular tachycardia as directed for such purposes.

7

45.    Defendants knew, or should have known, that patients, including Plaintiff Folly and his attending physicians, were relying on Defendants' skills and judgments, and the implied and express warranties and representations.

46.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

47.    As a direct result of the breach of warranties by the Defendants, Plaintiff Folly has been injured as aforesaid.

## COUNT IX
### (Misrepresentation – Roger Guy-Folly v. Guidant Corp., et al.)

48.    All of the allegations contained in Counts VI, VII, and VIII are realleged and incorporated herein by reference.

49.    Defendants represented to patients, including Plaintiff Folly and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

50.    Plaintiff Folly and his attending physicians did, in fact, rely on Defendants' representations in their advice about purchase, use, and implantation of the subject ICD.

51.    At all times relevant to this action, these representations were known to Defendants to be false or they were made by Defendants in conscious, reckless and/or unreasonable disregard of facts available to Defendants, indicating a lack of efficacy and a danger to patients.

52.    As a direct result of said false representations by Defendants, Plaintiff Folly was injured as aforesaid.

## COUNT X
### (Punitive Damages – Roger-Guy Folly v. Guidant Corp., et al.)

8

53.    The acts of the Defendants were gross, wanton and intentional in that Defendants, at the time of Plaintiff Folly's implant, had actual and constructive notice that the subject ICD was defective. Additionally, the Defendants knew or should have known that the subject ICD was ineffective, of no use and provided no benefit to the patient. Nonetheless, the Defendants knowingly and intentionally promoted the subject ICD as safe and effective to treat ventricular tachycardia disregarding the adverse reports that demonstrated the defective nature of the subject ICD. Additionally, the Defendants fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Folly by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD.

## COUNT XI
### (Negligence – Jaycee Gardner v. Guidant Corp., et al.)

54.    All of the foregoing allegations are realleged and incorporated herein by reference.

55.    On or about May 16, 2001, Plaintiff Gardner was implanted with a Guidant Ventak Prizm 2DR, Model 1861 ICD. The device was implanted at Union Memorial Hospital in Baltimore, Maryland.

56.    On or about June 17, 2005, Guidant issued a recall of certain of its ICDs, including the Ventak Prizm 2DR, Model 1861, due to defects in the devices.

57.    As a result of the Defendants' defective ICD, Mr. Gardner requires ongoing medical monitoring and may require surgery to replace said defective device.

58.    As a result of the Defendants' defective ICD, Mr. Gardner suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD, incurred medical expenses for care and treatment, and suffered physical and mental pain.

9

59.    Said injuries were the result of the negligence of the Defendants, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs, negligent design, and failure to heed and report adverse reports regarding the safety of ICDs.

## COUNT XII
### (Strict Liability – Jaycee Gardner v. Guidant Corp., et al.)

60.    All of the allegations contained in Count XI are realleged and incorporated herein by reference.

61.    Defendants were at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs, which they sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Gardner.

62.    While Defendants were engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs, Defendants sold the ICDs to other healthcare providers for use by and resale to patients, including Plaintiff Gardner.

63.    The subject ICD implanted in Mr. Gardner was in the same form and condition in which it existed when Defendants' sold and/or provided and delivered the ICD for distribution to various healthcare providers.

64.    Defendants expected the ICD to reach consumers, including Mr. Gardner, in the condition in which they sold them.

65.    Said product was defective when placed on the market by Defendants. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

66.    Said product was defective and unreasonably dangerous when put to its intended use.

67.    As a result of Defendants' marketing and promotion of said defective and unreasonably dangerous product, Mr. Gardner was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

68.    By reason of having marketed and promoted ICDs in their defective and unreasonably dangerous condition, Defendants are strictly liable to Plaintiff Gardner for his ICD-related injuries, losses, and damages.

## COUNT XIII
### (Breach of Warranty – Jaycee Gardner v. Guidant Corp., et al.)

69.    All of the allegations contained in Counts XI and XII are realleged and incorporated herein by reference.

70.    At all times relevant to this action, Defendants marketed and promoted ICDs accompanied by implied and express warranties and representations to physicians and their patients that the device was efficacious to treat ventricular tachycardia as directed for such purposes.

71.    Defendants knew, or should have known, that patients, including Plaintiff Gardner and his attending physicians, were relying on Defendants' skills and judgments, and the implied and express warranties and representations.

72.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

73.    As a direct result of the breach of warranties by the Defendants, Plaintiff Gardner has been injured as aforesaid.

## COUNT XIV
### (Misrepresentation – Jaycee Gardner v. Guidant Corp., et al.)

74.    All of the allegations contained in Counts XI, XII, and XIII are realleged and incorporated herein by reference.

11

75.     Defendants represented to patients, including Plaintiff Gardner and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

76.     Plaintiff Gardner and his attending physicians did, in fact, rely on Defendants' representations in their advice about purchase, use, and implantation of the subject ICD.

77.     At all times relevant to this action, these representations were known to Defendants to be false or they were made by Defendants in conscious, reckless and/or unreasonable disregard of facts available to Defendants, indicating a lack of efficacy and a danger to patients.

78.     As a direct result of said false representations by Defendants, Plaintiff Gardner was injured as aforesaid.

## COUNT XV
### (Punitive Damages – Jaycee Gardner v. Guidant Corp., et al.)

79.     The acts of the Defendants were gross, wanton and intentional in that Defendants, at the time of Plaintiff Gardners's implant, had actual and constructive notice that the subject ICD was defective.  Additionally, the Defendants knew or should have known that the subject ICD was ineffective, of no use and provided no benefit to the patient. Nonetheless, the Defendants knowingly and intentionally promoted the subject ICD as safe and effective to treat ventricular tachycardia disregarding the adverse reports that demonstrated the defective nature of the subject ICD.  Additionally, the Defendants fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Gardner by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD.

## COUNT XVI
### (Negligence – Connie Jackson v. Guidant Corp., et al.)

12

80.    All of the foregoing allegations are realleged and incorporated herein by reference.

81.    On or about September 8, 2004, Plaintiff Jackson was implanted with a Guidant Contak Renewal 3 H170 biventricular ICD. The device was implanted at Washington Hospital Center in Washington, D.C.

82.    On or about June 17, 2005, Guidant issued a recall of certain of its ICDs, including the Contak Renewal H170, due to defects in the devices.

83.    As a result of the Defendants' defective ICD, Ms. Gardner requires ongoing medical monitoring and may require surgery to replace said defective device.

84.    As a result of the Defendants' defective ICD, Ms. Gardner suffered injuries, including, but not limited to, anxiety from the current and future status of her ICD, incurred medical expenses for care and treatment, and suffered physical and mental pain.

85.    Said injuries were the result of the negligence of the Defendants, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs, negligent design, and failure to heed and report adverse reports regarding the safety of ICDs.

## COUNT XVII
### (Strict Liability – Connie Jackson v. Guidant Corp., et al.)

86.    All of the allegations contained in Count XVI are realleged and incorporated herein by reference.

87.    Defendants were at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs, which they sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Jackson.

13

88.    While Defendants were engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs, Defendants sold the ICDs to other healthcare providers for use by and resale to patients, including Plaintiff Jackson.

89.    The subject ICD implanted in Ms. Jackson was in the same form and condition in which it existed when Defendants' sold and/or provided and delivered the ICD for distribution to various healthcare providers.

90.    Defendants expected the ICD to reach consumers, including Ms. Jackson, in the condition in which they sold them.

91.    Said product was defective when placed on the market by Defendants. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

92.    Said product was defective and unreasonably dangerous when put to its intended use.

93.    As a result of Defendants' marketing and promotion of said defective and unreasonably dangerous product, Ms. Jackson was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

94.    By reason of having marketed and promoted ICDs in their defective and unreasonably dangerous condition, Defendants are strictly liable to Plaintiff Jackson for her ICD-related injuries, losses, and damages.

## COUNT XVIII
### (Breach of Warranty – Connie Jackson v. Guidant Corp., et al.)

95.    All of the allegations contained in Counts XVI and XVII are realleged and incorporated herein by reference.

96.    At all times relevant to this action, Defendants marketed and promoted ICDs

14

accompanied by implied and express warranties and representations to physicians and their patients that the device was efficacious to treat ventricular tachycardia as directed for such purposes.

97.    Defendants knew, or should have known, that patients, including Plaintiff Jackson and his attending physicians, were relying on Defendants' skills and judgments, and the implied and express warranties and representations.

98.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

99.    As a direct result of the breach of warranties by the Defendants, Plaintiff Jackson has been injured as aforesaid.

## COUNT XIX
### (Misrepresentation – Connie Jackson v. Guidant Corp., et al.)

100.    All of the allegations contained in Counts XVI, XVII, and XVIII are realleged and incorporated herein by reference.

101.    Defendants represented to patients, including Plaintiff Jackson and her attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

102.    Plaintiff Jackson and her attending physicians did, in fact, rely on Defendants' representations in their advice about purchase, use, and implantation of the subject ICD.

103.    At all times relevant to this action, these representations were known to Defendants to be false or they were made by Defendants in conscious, reckless and/or unreasonable disregard of facts available to Defendants, indicating a lack of efficacy and a danger to patients.

15

104.    As a direct result of said false representations by Defendants, Plaintiff Jackson was injured as aforesaid.

## COUNT XX
### (Punitive Damages – Connie Jackson v. Guidant Corp., et al.)

105.    The acts of the Defendants were gross, wanton and intentional in that Defendants, at the time of Plaintiff Jackson's implant, had actual and constructive notice that the subject ICD was defective. Additionally, the Defendants knew or should have known that the subject ICD was ineffective, of no use and provided no benefit to the patient. Nonetheless, the Defendants knowingly and intentionally promoted the subject ICD as safe and effective to treat ventricular tachycardia disregarding the adverse reports that demonstrated the defective nature of the subject ICD. Additionally, the Defendants fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Jackson by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD.

## COUNT XXI
### (Negligence – Ramsaran Sahu v. Guidant Corp., et al.)

106.    All of the foregoing allegations are realleged and incorporated herein by reference.

107.    On or about March 29, 2002, Plaintiff Sahu was implanted with a Guidant Prizm PR, model 1861. The device was implanted at Chippenham & Johnston-Willis Medical Center in Richmond, Virginia.

108.    On or about June 17, 2005, Guidant issued a recall of certain of its ICDs, including the Prizm PR, model 1861, due to defects in the devices.

109.    As a result of the Defendants' defective ICD, Mr. Sahu required surgery to replace said defective device on or about September 28, 2005, at the Virginia Hospital Center in Arlington, Virginia.

16

110.    As a result of the Defendants' defective ICD, Mr. Sahu suffered injuries, including, but not limited to, ICD replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

111.    Said injuries were the result of the negligence of the Defendants, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs, negligent design, and failure to heed and report adverse reports regarding the safety of ICDs.

## COUNT XXII
### (Strict Liability – Ramsaran Sahu v. Guidant Corp., et al.)

112.    All of the allegations contained in Count XXI are realleged and incorporated herein by reference.

113.    Defendants were at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs, which they sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Sahu.

114.    While Defendants were engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs, Defendants sold the ICDs to other healthcare providers for use by and resale to patients, including Plaintiff Sahu.

115.    The subject ICD implanted in Mr. Sahu was in the same form and condition in which it existed when Defendants' sold and/or provided and delivered the ICD for distribution to various healthcare providers.

116.    Defendants expected the ICD to reach consumers, including Mr. Sahu, in the condition in which they sold them.

17

117.   Said product was defective when placed on the market by Defendants. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

118.   Said product was defective and unreasonably dangerous when put to its intended use.

119.   As a result of Defendants' marketing and promotion of said defective and unreasonably dangerous product, Mr. Sahu was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

120.   By reason of having marketed and promoted ICDs in their defective and unreasonably dangerous condition, Defendants are strictly liable to Plaintiff Sahu for his ICD-related injuries, losses, and damages.

## COUNT XXIII
### (Breach of Warranty – Ramsaran Sahu v. Guidant Corp., et al.)

121.   All of the allegations contained in Counts XXI and XXII are realleged and incorporated herein by reference.

122.   At all times relevant to this action, Defendants marketed and promoted ICDs accompanied by implied and express warranties and representations to physicians and their patients that the device was efficacious to treat ventricular tachycardia as directed for such purposes.

123.   Defendants knew, or should have known, that patients, including Plaintiff Sahu and his attending physicians, were relying on Defendants' skills and judgments, and the implied and express warranties and representations.

124.   At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

18

125.    As a direct result of the breach of warranties by the Defendants, Plaintiff Sahu has been injured as aforesaid.

## COUNT XXIV
### (Misrepresentation – Ramsaran Sahu v. Guidant Corp., et al.)

126.    All of the allegations contained in Counts XXI, XXII, and XXIII are realleged and incorporated herein by reference.

127.    Defendants represented to patients, including Plaintiff Sahu and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

128.    Plaintiff Sahu and his attending physicians did, in fact, rely on Defendants' representations in their advice about purchase, use, and implantation of the subject ICD.

129.    At all times relevant to this action, these representations were known to Defendants to be false or they were made by Defendants in conscious, reckless and/or unreasonable disregard of facts available to Defendants, indicating a lack of efficacy and a danger to patients.

130.    As a direct result of said false representations by Defendants, Plaintiff Sahu was injured as aforesaid.

## COUNT XXV
### (Punitive Damages – Ramsaran Sahu v. Guidant Corp., et al.)

131.    The acts of the Defendants were gross, wanton and intentional in that Defendants, at the time of Plaintiff Sahu's implant, had actual and constructive notice that the subject ICD was defective.  Additionally, the Defendants knew or should have known that the subject ICD was ineffective, of no use and provided no benefit to the patient. Nonetheless, the Defendants knowingly and intentionally promoted the subject ICD as safe and effective to treat ventricular

19

tachycardia disregarding the adverse reports that demonstrated the defective nature of the subject ICD. Additionally, the Defendants fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Sahu by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD.

**WHEREFORE**, Plaintiff Jagir S. Bhuller demands judgment against Defendants, jointly and severally, in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, jointly and severally, plus costs.

**WHEREFORE**, Plaintiff Roger-Guy Folly demands judgment against Defendants, jointly and severally, in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, jointly and severally, plus costs.

**WHEREFORE**, Plaintiff Jaycee Gardner demands judgment against Defendants, jointly and severally, in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, jointly and severally, plus costs.

**WHEREFORE**, Plaintiff Connie Jackson demands judgment against Defendants, jointly and severally, in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, jointly and severally, plus costs.

**WHEREFORE**, Plaintiff Ramsaran Sahu demands judgment against Defendants, jointly and severally, in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, jointly and severally, plus costs.

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

JAGIR S. BHULLER et.al.

*Plaintiff*

VS.

GUIDANT SALES CORPORATION

*Defendant*

06-0001221

Civil Action No. _____

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below**. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Aaron M. Levine

Name of Plaintiff's Attorney

1320 19th St., NW, Suite 500

Address

Washington, DC 20036

(202) 833-8040

Telephone

*Clerk of the Court*

By _____

Deputy Clerk

Date 02-17-06

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(0)-456/Mar. 98

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing on Aaron M. Levine, Attorney for Plaintiffs, at Aaron M. Levine & Associates, 1320 19th Street, N.W., Suite 500, Washington, D.C. 20036, via Ordinary U.S. Mail this 15th day of March, 2006.

_____

Carlos E. Provencio, Bar No. 461227
ATTORNEY FOR DEFENDANTS

Respectfully submitted,

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine /SL
Aaron M. Levine, #7864
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040

Brandon J. Levine /SL
Brandon J. Levine, #412130

Renee L. Robinson-Meyer /SL
Renee L. Robinson-Meyer, #455375

Steven J. Lewis, #472564

Counsel for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues of material facts.

Aaron M. Levine /SL
Aaron M. Levine

21



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

FEB 2 8 2006

JAGIR S BHULLER
Vs.                                              C.A. No.     2006 CA 001221 B
GUIDANT CORPROATION

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge GERALD I FISHER
Date:   February 17, 2006
Initial Conference: 9:30 am, Friday, May 19, 2006
Location:   Courtroom A-50
                515 5th Street N.W.
                WASHINGTON, DC  20001

Caio.doc